# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ELIZABETH MOENS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17 C 4073 |
| | ) |
| CITY OF CHICAGO, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Elizabeth Moens sued her former employer, the City of Chicago, under the Americans with Disabilities Act (ADA). Moens suffers from shoulder problems and anemia, and she alleges that she was harassed and fired on the basis of her disability. She also contends that the City fraudulently misrepresented that her job was a "career service" position and therefore entitled to certain protections from disciplinary action. The City has moved for summary judgment.

## Background

The City hired Moens as a graphics technician in the Department of Planning and Development in 2001. That position was classified as "career service," meaning that it included employment protections related to discipline, dismissal, and reclassification. One year later, Moens was promoted to staff assistant, a non-career service position. She remained in that position until 2010, when she was made a coordinator of economic development.

Moens' health problems began in 2013, when she sustained injuries to her shoulder and arm. Her internist, Dr. David Brandt, diagnosed her with bicipital tendonitis and lateral epicondylitis (commonly known as tennis elbow). Around that time, she successfully requested to be transferred to a new supervisor within her department after her previous supervisor docked her pay because of an unexcused absence. As a result, in November 2013 Moens began reporting directly to Brad McConnell.

In January 2014, McConnell and Amy Henry, the director of human resources, issued Moens a written reprimand for a number of late arrivals, early departures, and absences the month before. After being issued the reprimand, Moens was again absent without leave for several weeks. She eventually requested and was granted medical leave of absence in late February 2014. Her leave extended through May 2014.

In June 2014, Moens was granted an accommodation to work part time. She continued to accrue unexcused absences and early departures, however, and Henry advised Moens that her inconsistent attendance violated the terms of her accommodation. Moens sought and was granted a second medical leave of absence, which lasted from July to September 2014. At Moens' request, that leave period was extended through October 2014. Around that time, Dr. Brandt discovered that Moens' iron levels were atypically low, though she denied experiencing fatigue.

When she was scheduled to begin work again in November 2014, Moens expressed a desire for another part-time accommodation. Due to delays in obtaining medical paperwork, the City did not approve her accommodation request until

December 23. That same day, Moens requested that her accommodation be altered so that she would begin work at 9:30 a.m. rather than 9:00. The City approved that request, and Moens returned to work under her modified accommodation on December 29, 2014.

In February 2015, McConnell and Henry notified Moens that she had been late to work every day during the preceding pay period, and Henry suggested moving her start time back to 10 a.m. to help her arrive on time. Moens agreed, but she continued arriving late. On March 6, the department's disability officer, Jennifer Smith, suggested again adjusting Moens' start time to allow her to arrive between 10:30 and 11:00 a.m. Moens agreed to that modification.

Despite these changes to her schedule, Moens continued arriving late to work. In April 2015, McConnell issued her another written reprimand in which he noted that she had been late on dozens of occasions in the previous four months, including after her start time was pushed back twice.

Moens' accommodation was set to end on June 11, 2015, and Henry informed her that she needed to submit paperwork for a new accommodation before that date if she wished to maintain her part-time schedule. But Moens did not submit her paperwork until July, although she contends that happened only because the City cancelled her insurance, making it difficult for her to see her physicians. In order to allow Moens to continue working part time while the new accommodation was pending, Henry arranged to advance Moens' sick leave to cover her part-time schedule.

On July 2, 2015, McConnell issued Moens a seven-day disciplinary suspension due to her frequent absences, late arrivals, and early departures in May and June. She

returned to work later that month under a new accommodation that permitted her to work four hours a day beginning between 10:30 and 11:00 a.m.  That accommodation remained in effect until January 2016.

On January 14, 2016, McConnell issued Moens a fourteen-day disciplinary suspension in response to Moens' continued attendance issues from September through December 2015.  The notice of suspension again identified dozens of unexcused absences, late arrivals, and early departures.  The day after she received the notice of suspension, Moens sent McConnell an e-mail accusing him of ignoring her and refusing to give her appropriate work assignments.

On January 19, 2016, Smith approved another accommodation, this one permitting Moens to work five to seven hours per day.  This schedule represented an increase in her daily work time, which Moens contends she sought for financial reasons.  In support of her request for the accommodation, Moens submitted a questionnaire from Dr. Brandt which stated that she could work five to seven hours per day because of her shoulder problems.  The questionnaire also stated that Moens suffered from fatigue caused by anemia.

Moens' accommodation specified that she was required to be at work during the "core times" of 9:30 a.m. to 4:00 p.m., excluding lunch and other break times.  In February, that accommodation was adjusted to require Moens to arrive at 10:00 a.m. and stay until 4:30 p.m.  Henry made this change at Moens' request.

On May 13, 2016 the department's commissioner, David Reifman, sent Moens a notice of termination.  He included a memo prepared by Brad McConnell that described numerous late arrivals, early departures, and absences beginning on February 1.

McConnell also stated in the memo that the escalating discipline—two written reprimands and two suspensions—had not improved Moens' attendance.

Moens sued the City, alleging that she was harassed and terminated on the basis of her disability in violation of the ADA. She also alleged fraud, breach of contract, and violations of the Family and Medical Leave Act (FMLA). The Court dismissed her breach of contract claim, *see* dkt. no. 26, and Moens voluntarily withdrew her claims under the FMLA, *see* dkt. nos. 54, 55. The City has moved for summary judgment on the remaining claims.

## Discussion

Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Giles v. Godinez*, 914 F.3d 1040, 1048 (7th Cir. 2019). To meet this standard, the moving party must show that "no reasonable jury could find for the other party based on the evidence in the record." *Martinsville Corral, Inc. v. Soc'y Ins.*, 910 F.3d 996, 998 (7th Cir. 2018). Though the Court construes the evidence and draws all reasonable inferences in Moens' favor, Moens must "present specific facts establishing a material issue for trial, and any inferences must rely on more than mere speculation." *Giles*, 914 F.3d at 1048.

**A.    Discrimination**

In count 1 of her second amended complaint, Moens alleges that the City failed to afford her reasonable accommodations and ultimately terminated her based on her disability.

### 1. Failure to accommodate

To withstand summary judgment on her claim that the City failed to accommodate her disabilities, Moens must "point to evidence showing that (1) she is a qualified individual with a disability within the meaning of the ADA; (2) her employer was aware of this disability; and (3) her employer failed to reasonably accommodate the disability." *Guzman v. Brown County*, 884 F.3d 633, 642 (7th Cir. 2018). A qualified individual is one who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

#### a. Qualified employee

The City argues that no reasonable jury could find that Moens was qualified given her record of tardiness and absenteeism. It cites *Whitaker v. Wisconsin Department of Health Services*, 849 F.3d 681 (7th Cir. 2017), in which the Seventh Circuit held that "regular attendance is an essential function of many jobs." *Id.* at 684 (citing *Basden v. Professional Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013) ("An employer is generally permitted to treat regular attendance as an essential job requirement and need not accommodate erratic or unreliable attendance.")). "When an employee is unable to perform the essential function of attending [her] employment, few, if any, reasonable accommodations exist." *Amadio v. Ford Motor Co.*, 238 F.3d 919, 928 (7th Cir. 2001). The City argues that because Moens could not maintain a consistent work schedule despite being given numerous accommodations, she was unqualified for her position with or without accommodations.

If regular attendance is an essential function of Moens' position, no reasonable jury could conclude that she was qualified within the meaning of the ADA. The City alleges that in the three months before her termination, Moens arrived late to work about twenty-five times, left early without approval about twenty times, and was absent without leave on four days. The record shows that these incidents mirror a pattern of serious attendance issues that began years earlier. On two previous occasions (in July 2015 and January 2016) she was suspended for similar attendance infractions. Although isolated instances of late arrivals or attendance problems might give rise to a factual dispute about Moens' qualifications, in this case the record overwhelmingly shows that for several years she was unable or unwilling to attend work on a consistent, predictable schedule.

Moens does not dispute the accuracy of the City's attendance data, but she argues that these alleged infractions should not count against her. First, she contends that her arrival time should have been 11 a.m., rather than 9:30 or 10:00, and that the City failed to permit her to start work at 11 only because it hoped to "collect tardies on the plaintiff and discharge her." Moens' Resp. Br., dkt. no. 78, at 4. But there is no evidence from which a reasonable jury could find that an 11:00 a.m. start time would have rendered Moens qualified. As Moens herself acknowledges, she was frequently tardy in 2015 when she worked under an accommodation that included an 11:00 a.m. start time. *See id.* at 4. And there is no evidence that Moens ever objected to starting work at 10:00 a.m.; indeed, the record reflects that in February 2016 her start time was moved to 10:00 a.m. at her request. There is therefore insufficient evidence to allow a reasonable jury to conclude that a later start time would have allowed Moens to "satisfy

7

the essential function of regular attendance." *Taylor-Novotny v. Health Alliance Med. Plans, Inc.*, 772 F.3d 478, 490 (7th Cir. 2014).

Moens' argument concerning her start time also fails because there is no evidence from which a reasonable jury could find that the City hoped she would arrive late to work so that it could fire her. To the contrary, the City's conduct in granting leaves of absence, providing accommodations, and modifying accommodations shows that it "bent over backwards to accommodate" Moens "in spite of [her] long history of poor work attendance." *EEOC v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 950 (7th Cir. 2001). Moens' contentions about the City's real motivations amount to unsupported speculation and are therefore insufficient at the summary judgment stage. *See Giles*, 914 F.3d at 1048.

Second, Moens argues that her allegedly early departures were permitted under the terms of her reasonable accommodation. She contends that she was required to work a total of only five hours each day, and that she simply opted to work through her allotted lunch and break period so that she could leave early. This contention contradicts her January and February 2016 accommodations, which expressly required her to "be at work during the core times" (that is, 9:30 a.m. to 4:00 p.m., later adjusted to 10:00 a.m. to 4:30 p.m.). *See* Jan. 2016 Accommodation, dkt. no. 76-2, at 549; Feb. 2016 Accommodation Modification, dkt. no. 82-14, at 4. Moreover, in the January 2016 notice of suspension, McConnell advised Moens that she had violated the terms of her previous accommodation by working outside the designated time period. Faced with this evidence, no reasonable jury could conclude that Moens was unaware of the times she was expected to be at work.

8

Although Moens does not expressly argue that regular and timely attendance were not essential functions of her job, she does cite an expert report that concludes that tardiness and absenteeism were widespread within the department. This suggests a possible argument that Moens was qualified because the City did not generally require punctuality and attendance of its employees. Moens bears the burden of establishing that regular attendance was not required of someone in her position. *See Taylor-Novotny*, 772 F.3d at 490.

The expert report on which Moens relies has little to no probative value, however, because the expert's opinions are "substantially incomplete." *NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 785 (7th Cir. 2000); *see also Bourke v. Conger*, 639 F.3d 344, 347-48 (7th Cir. 2011) ("[I]t is well established that an expert report that lacks foundation and depth will be given little consideration by courts."). The expert, an accountant named Donna Rogers-Blackwell, acknowledged in her deposition that she did not know whether the absences or late arrivals described in her report were covered by sick time or other authorized leave. Rogers-Blackwell similarly did not know whether the start times listed in the data she used were accurate and up-to-date, and she offers no opinion about whether the other employees were subject to the same attendance expectations as Moens—expectations that could be reasonably expected to differ because, for example, almost all the other employees worked full-time. *See Fuqua v. Brennan*, 645 F. App'x 519, 523 (7th Cir. 2016) (noting that full- and part-time employees are not appropriately compared). Thus, although Rogers-Blackwell's report may constitute some evidence of tardiness or absenteeism among other employees within Moens' department, Rogers-Blackwell had no basis for determining whether

9

these data reflected the City's attendance expectations for Moens, and Moens has not introduced any other evidence to address these deficiencies. The expert report is therefore insufficient to support a reasonable inference that attendance and timeliness were not essential functions of Moens' position.

Because there is insufficient evidence in the record from which a reasonable jury could conclude that Moens' position was an exception to the rule that timely and consistent attendance is an essential function of the job, the City is entitled to summary judgment on Moens' failure-to-accommodate claim.

### b. Reasonable accommodations

The City also argues that it is entitled to summary judgment on this claim because it gave Moens reasonable accommodations. An employer satisfies its obligations to reasonably accommodate an employee's disability if it takes the plaintiff's accommodation requests seriously, engages in an interactive process with the employee to determine what accommodations it reasonably needs to make, and makes them. *Atkinson v. SG Ams. Sec., LLC*, 693 F. App'x 436, 439 (7th Cir. 2017) (citing *Swanson v. Village of Flossmoor*, 794 F.3d 820, 827 (7th Cir. 2015)). The plaintiff bears the burden of showing that that her requests constitute reasonable accommodations that would have effectively accommodated her disability. *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 547 (7th Cir. 2008).

The City contends that it satisfied its obligations under the ADA by issuing Moens four separate accommodations between June 2014 and January 2016, permitting multiple medical leaves of absence, and twice modifying an existing accommodation with the stated goal of helping Moens meet her attendance obligations. These

undisputed facts suggest that the City engaged in precisely the sort of interactive process that was required of it.

Moens argues that there is a genuine dispute about whether the accommodations afforded to her were reasonable. As the Court mentioned above, Moens contends that the City should have given her a start time of 11:00 a.m. but failed to do so because it knew she would be late and hoped to fire her for her tardiness. As the Court has already concluded, however, there is insufficient evidence to permit a reasonable jury to find that Moens' attendance record would have improved with a start time of 11:00 a.m. Moreover, the City was not required to offer an accommodation that permitted erratic and inconsistent attendance. *See Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899 n.9 (7th Cir. 2000) (rejecting as unreasonable an accommodation that would have permitted the plaintiff "to come and go as he pleased"); *Waggoner v. Olin Corp.*, 169 F.3d 481, 484 (7th Cir. 1999).

Moens also argues that her accommodation was unreasonable to the extent that it required her to be in the office during a fixed period of time, instead of requiring her simply to work for five hours before leaving. This argument fails because it also relies on the false premise that an accommodation allowing Moens to work on an erratic or inconsistent schedule was reasonable. *See Yellow Freight*, 253 F.3d at 949. Though there may be circumstances in which this type of ad hoc work schedule would constitute a reasonable accommodation, Moens has pointed to no evidence showing that her position was an exception to the general rule that "attendance at the job site is a basic requirement of most jobs" and employers are not "obligated to tolerate erratic, unreliable attendance." *Id.* (quoting *Waggoner*, 169 F.3d at 484). In addition, given Moens'

lengthy track record of tardiness and absenteeism, a jury could not reasonably conclude that this proposed accommodation would have resolved her attendance issues such that she could perform the essential functions of her job.

For these reasons, the City is entitled to summary judgment on Moens' claim for failure to accommodate.

### 2. Wrongful termination

In order to withstand summary judgment on her claim for wrongful termination, Moens must point to evidence from which a reasonable jury could find that (1) she is a person with a disability; (2) she was qualified to perform the essential functions of her job with or without a reasonable accommodation, and (3) she suffered from an adverse employment decision as a result of her disability. *Guzman*, 884 F.3d at 641-42. As the Court previously stated, no reasonable jury could conclude that Moens was qualified given the evidence of her tardiness and absenteeism. Summary judgment on the claim of wrongful termination is therefore appropriate.

Because the Court concludes that no reasonable jury could find Moens qualified, it need not consider whether there is a factual dispute about whether the City knew about Moens' anemia or whether Moens has identified similarly situated comparators.

### B. Retaliation

Moens also contends that she was fired in retaliation for requesting accommodations. To prevail on this claim, Moens must show that she engaged in a statutorily protected activity, she suffered an adverse employment action, and there was a causal connection between the activity and the action. *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 566 (7th Cir. 2019). The City argues that it is entitled to summary judgment

because no reasonable jury could find that Moens' requests for accommodation caused her termination or other disciplinary actions.

Moens' contention that her firing was retaliatory relies on the same allegations that the Court has already discussed. Specifically, she argues that the City set an early start time solely so that it could discipline and fire her, and that her early departures did not violate the terms of her accommodation. As the Court has already discussed, these contentions lack evidentiary support that would permit a reasonable jury to find in Moens' favor on her retaliation claim. Summary judgment for the City is therefore appropriate.

**C. Harassment**

In count 3, Moens alleges that she was harassed on the basis of her disability. In particular, she contends that the discipline she was issued due to her absences, late arrivals, and early departures constituted harassment. She also alleges that on the basis of her disability she was isolated and deprived of assignments befitting her job responsibilities. To withstand summary judgment, Moens must point to evidence from which a reasonable jury could find that (1) she was the object of unwelcome harassment; (2) the harassment was based on disability; (3) it was sufficiently sever and pervasive to alter the conditions of her employment; and (4) there is a basis for employer liability. *Bellino v. Peters*, 530 F.3d 543, 551 (7th Cir. 2008).

Assuming that Moens' claim is cognizable, *see Lloyd v. Switfy Transp., Inc.*, 552 F.3d 594, 603 (7th Cir. 2009) (declining to decide whether hostile work environment claims are actionable under the ADA), the City is entitled to summary judgment because Moens has failed to point to evidence that any harassment was based on her

disabilities. She cites evidence that she complained of being denied appropriate work and socially isolated by her supervisor but provides no evidence that would permit a reasonable inference that her supervisor took those actions because she was disabled. Similarly, as the Court has already discussed, Moens' contentions that she was disciplined for her late arrivals and early departures specifically because she was disabled lacks any basis in the record. At the summary judgment stage, Moens cannot rely on mere allegations but must identify evidence showing that a factual dispute exists. *Johnson v. Advocate Heath & Hosps. Corp.*, 892 F.3d 887, 896 (7th Cir. 2018) ("It is the plaintiffs' responsibility to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."). Without such evidence, Moens' harassment claim cannot survive summary judgment.

**D.    Fraud**

In her final claim, Moens alleges that the City defrauded her by misrepresenting that her job was classified as a "career service" position, meaning that it included certain disciplinary protections. In order to withstand summary judgment on her fraud claim, which is governed by Illinois law, Moens must point to evidence that would allow a reasonable jury to find "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Squires-Cannon v. Forest Preserve Dist. of Cook Cty.*, 897 F.3d 797, 805 (7th Cir. 2018). To prevail on a theory of fraudulent concealment, Moens must show that the City concealed a material fact when it was under a duty to disclose that fact to Moens. *Id.*

In Moens' second amended complaint, she alleges that her position was reclassified from career service to non-career service without her knowledge. She also alleges that she was harmed by this fraudulent concealment because she was denied the opportunity to challenge her reclassification. This contention lacks support, however, because the evidence shows that her job title changed from "Coordinator of Economic Development" to "Coordinator of Economic Development II" but that neither position was classified as career service. For example, the letter recommending retitling of Moens' position states that both before and after the title change her position was excluded from career service.

Moens disputes that her position was classified as non-career service. First, she alleges that the City stated that she was a career service employee in 2010. But this statement concerned not Moens' position as a Coordinator of Economic Development, but an entirely different job—a career service position for which Moens was recommended but that she was not ultimately given. Second, Moens points to a version of her work history that indicated that her position was career service. The City contends that this was an error, and it points out that Moens conceded that she never saw that version of her work history. Moens also admitted that she did not see a leave of absence form that allegedly included a checked box identifying her as a career service employee. Third, Moens argues that she was subjected to progressive discipline, which is available only to career service employees. This contention lacks merit because the City's disciplinary rules expressly permitted progressive discipline to be used for non-career service employees.

In the absence of evidence to support Moens' contention that her position was reclassified, the City is entitled to summary judgment on Moens' claim for fraudulent concealment.

**Conclusion**

For the foregoing reasons, the Court grants defendant's motion for summary judgment [dkt. no. 74] and directs the Clerk to enter judgment in favor of defendant and against plaintiff. The trial date of August 19, 2019 is vacated.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 11, 2019